Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                  1:19-cv-03209

| | |
|---|---|
| Mohammed Garadi, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| Mars Wrigley Confectionery US, LLC | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Mars Wrigley Confectionery US, LLC ("defendant") manufactures, distributes, markets, labels and sells  ice cream products labeled as vanilla ice cream to consumers from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website (the "Products").

2.     The Products include ice cream bars (2.89 oz/85.33 ml) ("Bars") and miniature bars ("Minis") (0.75 oz/ 22.2 ml) and are sold individually and packages containing multiple bars and in the case of the Minis, different varieties (i.e., "vanilla ice cream," "chocolate chip ice cream," "chocolate ice cream").

3.     The Bars include Vanilla Ice Cream With Milk Chocolate, Dark Chocolate and Milk Chocolate With Almonds.

 



4.    The Minis include Vanilla Ice Cream With Milk Chocolate and Dark Chocolate.

 

5.    The front labels of the Bars indicate they contain "Vanilla Ice Cream" – i.e., Vanilla Ice Cream with Milk Chocolate.

6.      The front labels of the Minis indicate "Vanilla Ice Cream" – i.e., Vanilla • Chocolate Chip Ice Cream, with "Ice Cream" preceded by the flavor type – Vanilla and Chocolate Chip.

7.      The Products' back labels encourage consumers to "Take a moment…to enjoy the rich flavor of vanilla ice cream dipped in silky smooth DOVE Milk Chocolate.  An experience like no other."



8.      Ice cream is a year-round treat enjoyed by Americans of all ages and backgrounds – 96% according to one survey.[1]

9.      Among flavors, vanilla has long been the country's preferred favorite, confirmed by those who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

10.     This fact was recently confirmed in a survey conducted of the members of the two groups who are responsible for supplying ice cream – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association ice cream parlors.

---

[1] Arwa Mahdawi The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

11.    According to an IDFA executive, "Vanilla has long been the best-selling ice cream flavor not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats," such as the centerpiece of a hot fudge Sunday, in a cold glass of root beer (float) or topping a warm slice of mom's fresh-baked apple pie.[2]

12.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[3]

13.    Even one of our nation's Founding Fathers, Thomas Jefferson, appreciated vanilla and it is rumored he described it as *supra alli* – Latin for 'above others' – in the vanilla ice cream recipe discovered at his Monticello estate.[4]

14.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[5]

15.    Due to its versatility and demand, there are constant attempts to imitate vanilla, whether through synthetic vanillin made from tree bark, or harmful compounds such as coumarin.

16.    To protect consumers from being deceived by products that purport to contain vanilla but do not, standards were developed to require it be labeled correctly and conform with consumer expectations.[6]

---

[2] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[3] Bill Daley, Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[4] Eater.com, The Reason You Love Ice Cream So Much Is Simple: Science, https://www.eater.com/ad/16388088/science-chemistry-ice-cream
[5] Daphna Havkin-Frenkel, et al. "A comprehensive study of composition and evaluation of vanilla extracts in US retail stores," Handbook of Vanilla Science and Technology (2019): 349-366 (Authors Note: Havkin-Frenkel's work also discusses "Vanilla WONF" and credibly expresses the position based on consumer understanding and regulatory correspondence, that it is not permitted by vanilla standards when a product purports to be labeled as "vanilla" because by definition, it is misleading, since the characterizing vanilla flavor is "spiked" by the simulating, resembling, extending other natural flavors.)
[6] 21 C.F.R. § 169.175-182.

17. All of the Products are uniformly marketed and advertised as Vanilla Ice Cream in point-of-sale marketing, retailers' display ads and promotion, websites, television and radio ads.

18. The Products are misleading because despite being labeled as "Vanilla Ice Cream," they have less vanilla flavor derived from vanilla beans than their name suggests.

19. The Product's labeling leads consumers to believe the flavor source is vanilla extract or another vanilla flavoring derived solely from vanilla beans, when it is not.

20. The designation "natural flavor" is misleading because it implies all of the flavor comes from vanilla, because the Products are named "vanilla ice cream."

21. This is evident from the Products' ingredient list, identical across the varieties for the vanilla ice cream.

<u>Nutrition Facts</u>                                    <u>Ingredient List</u>



INGREDIENTS: ICE CREAM: SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. COATING: MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND NATURAL FLAVORS), COCONUT OIL, PALM OIL.

**INGREDIENTS: ICE CREAM:** SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, NATURAL FLAVOR, BETA CAROTENE
**COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVORS), COCONUT OIL, PALM OIL.

I. Ice Cream Flavoring

22. In the context of ice cream, consumers expect real vanilla derived from vanilla beans

5

as the source of the flavor.

23.    Ice cream labeled as vanilla ice cream will not be expected to have any flavoring derived from sources other than vanilla beans.[7]

24.    This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[8]

25.    Where ice cream is predominantly flavored with vanilla extract and an artificial flavoring that simulates vanilla – i.e., vanillin from non-vanilla source – the product must inform the consumer it is "vanilla *flavored*." (emphasis added).[9]

26.    If an artificial vanilla flavor (i.e., synthetic vanillin) is predominant in a vanilla ice cream despite the presence of some natural flavor (vanilla extract), it would be designated as "artificial Vanilla" or "artificially flavored Vanilla."[10]

## II.  What the "Natural Flavor" on the Products' Ingredient List Means

27.    A "natural flavor" has three parts: the starting material for the production of the natural flavor, the process by which it is produced and that it be used solely for its flavoring as opposed to nutritive purposes.[11]

28.    For the purposes of vanilla, a flavor may be considered "natural" under the general flavor regulations but is actually "artificial" when derived from a source other than vanilla beans.

### A.  Natural Flavor Does Not Refer to Vanilla Extract or Vanilla Flavor

29.    Defendant identifies "Natural Flavor" as the flavoring ingredient for the Products.

---

[7] 21 C.F.R. § 135.110(f)(2)(i) ("Category 1")
[8] In contrast to the regulations at 21 C.F.R. § 101.22.
[9] 21 C.F.R. § 135.110(f)(2)(ii) ("Category 2")
[10] 21 C.F.R. § 135.110(f)(2)(iii) ("Category 3")
[11] 21 C.F.R. § 101.22(a)(3)

30.     For a product labeled as vanilla ice cream, the sole flavor must be vanilla extract or flavor.

31.     The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[12]

32.     However, it is improbable that the Products contain vanilla extract or vanilla flavor as their sole flavoring source.

33.     The first reason why vanilla extract or flavor is not identified as the sole flavoring source is because if it were, the ingredient list would indicate it.

34.     Labeling vanilla flavor touches on regulations for vanilla flavoring, general (natural) flavoring and ice cream flavoring.[13]

35.     Since it is always preferable, when faced with general and specific regulations, to use the specific one, defendant did not avail itself of this option for the reason that ingredient identified as "natural flavor" is not vanilla flavor or vanilla extract.

36.     Additionally, it would be illogical that where a company would use an ingredient that costs more money (vanilla-based) and is understood as a higher quality ingredient by consumers, it would designate that ingredient with a general term for flavoring perceived by consumers to cost less money (catchall "natural flavor").

B.     Natural Flavor Does Not Refer to Vanilla-Vanillin Combination Ingredients

37.     Vanillin is the most significant flavoring substance in vanilla beans and therefore, in

---

[12] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).
[13] 21 C.F.R. § 101.22, 169

vanilla flavorings.

38.     The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[14]

39.     The standardized vanilla-vanillin ingredients are not appropriately identified as "natural flavor" and unlikely to be the ingredients contained in the Products' "natural flavor."

40.     It has been estimated that 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

41.     This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

42.     It is misleading to use (synthetic) vanillin in a vanilla product to boost the vanilla flavor, without clearly designating that the vanillin is derived from sources that are not vanilla.

43.     Otherwise, the consumer will believe a product's flavor is exclusively derived from vanilla beans and pay more money for it.

44.     In a vanilla ice cream product, it is misleading to label vanillin as "natural flavor" because this implies it is a natural vanilla flavor when in fact it is not derived from vanilla beans, whose flavor it simulates.[15]

45.     This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

C.   Vanilla WONF

46.     The designation "with other natural flavors" is intended to be used where a food contains a "characterizing flavor from the product whose flavor is simulated and other natural

---

[14] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[15] 21 C.F.R. § 101.22(a)(3)

flavor that simulates, resembles, or reinforces the characterizing flavor."[16]

47.    Listing an ingredient as Vanilla WONF on foods that are characterized by vanilla is false, deceptive and misleading because it gives the false impression that the "natural flavor" ("with other natural flavors") it provides are derived from vanilla beans.

48.    The application of "WONF" to foods characterized by (tastes like) vanilla such as vanilla ice cream, vanilla yogurt, etc.,  is deceptive and misleading because it would mean the product contains an insufficient amount of vanilla extract or flavor, but contains natural flavor that simulates, resembles, reinforces or extends the characterizing flavor.

49.    In the context of vanilla, natural flavor is not derived from vanilla beans, and the result is a product that tastes like vanilla, but the product is named as if its exclusive flavoring source was vanilla beans, such as Vanilla Ice Cream or Vanilla Yogurt.

50.    Reviewing defendant's supplier's ingredient sheet would indicate the ingredient they were provided is likely designated as "Vanilla Flavor with Other Natural Flavors" (Vanilla WONF) or a slight variation of this.

51.    Even if defendant listed the "natural flavor" as "Vanilla WONF," it would still be misleading to consumers who purchased vanilla ice cream.

52.    No standardized vanilla ingredients provide for "other natural flavors" to be added with a natural vanilla flavoring or extract.

53.    In the context of a vanilla ice cream, WONF flavors would be designated where there is "a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated and other natural flavor [synthetic or artificial vanillin] which simulates, resembles or reinforces the characterizing flavor."

---

[16] 21 C.F.R. § 101.22(i)(1)(iii)

54.     The vanilla standards do not provide for the addition of "other natural flavors" to vanilla because this results in the "spiking" of vanilla "with other natural flavors," such as synthetic, or ethyl vanillin, which deceives consumers as to believing that more vanilla is present than actually the case, and that all of the vanilla flavor is derived from vanilla beans.

55.     Spiking vanilla by addition of synthetic vanillin, no matter how it is produced, is misleading to consumers because they will reasonably expect "vanilla" to indicate a flavoring substance exclusively obtained from the vanilla bean.

56.     Defendant does not stop at misrepresenting the amount and type of vanilla flavoring in the Products, which are misleading in their own right.

57.     Defendant's Products also contain "beta carotene," commonly known as the pigment in carrots.

58.     When used in food production, it provides a yellowish hue similar to the shades of cream common in milkfat, and primarily, in butter, produced by dairy cattle in the United States.

59.     No allegation is made with respect to the how the beta-carotene is declared in the ingredient list.[17]

60.     Rather, the addition of beta-carotene has the effect of modifying the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a tanner, darker shade like in the following stock image.

---

[17] 21 C.F.R. § 101.22(k)(3)



61.    This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products.

62.    The Products contain other representations which are misleading and deceptive.

63.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $7.99 per 10 oz (across the product line), excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

64.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

65.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

66.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

67.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

68.    A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

69.     Plaintiff is a citizen of Kings County, New York.

70.     John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

71.     John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

72.     The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

73.     Plaintiffs purchased the Products based upon the representations on the packaging.

74.     Defendant is a Delaware limited liability company with a principal place of business in Hackettstown, New Jersey and upon information and belief, at least one member of defendant is not a citizen of New York State.

75.     During the class period, plaintiffs purchased one or more Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

76.     Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

77.     Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

78.     The classes will consist of all consumers in the following states:  all, New York, Illinois, Idaho, Ohio, Massachusetts, Virginia, California, who purchased any Products containing the actionable representations during the statutes of limitation.

79.     A class action is superior to other methods for fair and efficient adjudication.

80.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

81.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

82.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

83.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

84.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

85.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

86.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

87.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories</u>

88.    Plaintiffs and John and Jane Doe plaintiffs, representing the 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j.   Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.   Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and

Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

89.   Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

90.   Jane Doe plaintiffs assert causes of action under the laws of the other 49 states, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

91.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

92.   Plaintiffs desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type and representations.

93.   Jane Doe California plaintiff and members of the California Subclass engaged in transactions as consumers who bought the Products for personal, family, or household consumption or use.  Cal. Civ. Code § 1761(d)-(e).

94.   In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

95.   After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

96.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

97.    Defendant violated the consumer protection laws of the states indicated.

98.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the Products' composition.

99.    Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

100.   The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Violations of California's False Advertising and Unfair Competition Law</u>
(On Behalf of California Subclass)

101.   Jane Doe California Plaintiff realleges paragraphs above.

102.   Defendant falsely advertised the Products as being vanilla ice cream, expected to contain flavoring derived exclusively from vanilla beans.

103.   Jane Doe California Plaintiff and other members of the California Subclass suffered injury in fact and lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

104.   Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

<u>Violations of California's Unfair Competition Law</u>
(On Behalf of the California Subclass)

105.   Jane Doe California Plaintiff realleges all paragraphs above.

106.   Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c)

the Cal. Bus. & Prof. Code §§ 17580-17581.

107.   Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

108.   Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

109.   Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

110.   Jane Doe California Plaintiff and the other California Subclass members suffered substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

111.   There is no benefit to consumers or competition by deceptively marketing and labeling the Products.

112.   Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging which are misleading;

(b) provide restitution to Jane Doe California Plaintiff and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

<u>Negligent Misrepresentation</u>

113.   Plaintiff incorporates by references all preceding paragraphs.

114. Defendant misrepresented the Products and took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand.

115. Defendant had a duty to disclose and/or provide a non-deceptive, lawful description and emphasis of the Products' attributes and qualities.

116. This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

117. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

118. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

119. Plaintiff incorporates by references all preceding paragraphs.

120. Defendant manufactures and sells products which misrepresent their composition and organoleptic and sensory qualities and attributes.

121. Defendant warranted to plaintiff and class members that the Products contained only vanilla-derived flavoring was not truthful and misleading.

122. Plaintiff desired to purchase products which were as described by defendant.

123. Defendant had a duty to disclose and/or provide a non-deceptive description of the products or services and knew or should have known same were false or misleading.

124. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

125. The Products were not merchantable in their final sale form.

126.  Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

127.  Plaintiff incorporates by references all preceding paragraphs.

128.  Defendant's actions were motivated by increasing their market share amongst companies in the vanilla ice cream market, to deceive consumers who expect that "vanilla" will be designated as "natural" and by obscuring the actual (though likely improper) ingredient which is designated as "natural flavor."

129.  Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

130.  Plaintiff incorporates by references all preceding paragraphs.

131.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3.  Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350,

without limitation;

4. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

6. An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL, CLRA and other statutory claims;

8. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9. Such other and further relief as the Court deems just and proper.

Dated:   May 29, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03209
United States District Court
Eastern District of New York

Mohammed Garadi, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Mars Wrigley Confectionery US, LLC

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 29, 2019

/s/ Spencer Sheehan
Spencer Sheehan