**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

*-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Eastern District of New York

1:19-cv-03209-RJD-ST

| | |
|---|---|
| Mohammed Garadi, individually and on behalf of all others similarly situated, | |
| Plaintiff, | First Amended Complaint |
| - against - | |
| Mars Wrigley Confectionery US, LLC, | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Mars Wrigley Confectionery US, LLC ("defendant") manufactures, distributes, markets, labels and sells ice cream products purporting to contain flavor from their natural characterizing flavor, vanilla, dipped in "chocolate," under their Dove brand ("Products").

2.      The Products include Vanilla Ice Cream With Milk Chocolate, Vanilla Ice Cream with Dark Chocolate (pictured below), Vanilla Ice Cream with Milk Chocolate & Almonds and miniature versions of each.



3.     The Products' back labels encourage consumers to "Take a moment…to enjoy the rich flavor of vanilla ice cream dipped in silky smooth DOVE Milk Chocolate.  An experience like no other."



I.     Vanilla is Perennial Favorite Ice Cream Flavor

4.     Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

5.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

6.     Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.

pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

7.    Vanilla is the consistent number one flavor for 28% of Americans, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

8.    The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

9.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

10.    The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge, sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

A.    Philadelphia-style v. French Ice Cream

11.    In the development of ice cream, the two main types were Philadelphia-style and French ice cream, flavored of course, with vanilla.

12.    Like many confections in the United States, ice cream was brought here from France, courtesy of two statesmen who served as ambassadors to that nation:  Thomas Jefferson and Ben Franklin.

13.    While these two Founding Fathers could agree on the terms of the Declaration of Independence and Constitution, they could not agree on which type of vanilla ice cream was

---

[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

superior.

14.    Future President Thomas Jefferson was a partisan of the egg yolk base, describing this treat as "French ice cream."[7]

15.    The egg yolk solids, when mixed with vanilla, distinguish a "French" vanilla ice cream from its Philadelphia-style counterpart by providing a: [8]

- smoother consistency and silkier mouthfeel;

- caramelized, smoky and custard-like taste; and

- deep-yellow color.[9]

16.    Due possibly to Jefferson's efforts at popularizing this variety, ice cream with 1.4% or more egg yolk solids as part of its base is referred to as "french ice cream."[10]

17.    According to legend, Ben Franklin's "crème froid" was "one of the earliest recorded ice cream recipes from the United States," introduced during the sweltering summer of the Constitutional Convention of 1787.[11]

18.    Ever the inventor, Franklin adapted his ice cream recipe to the situation by relying on the abundance of dairy farms in the Philadelphia region, the lack of hens to provide an egg yolk base (compared to their prevalence in pre-Revolutionary France) and foregoing the cooking step

---

[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[8] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."
[9] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.
[10] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[11] Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; *but see* Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.

to more quickly deliver batches of this refreshing treat for the delegates.[12]

19.    Philadelphia-style and French ice creams also differed in the form of vanilla they used to provide flavor.

20.    The French variety used vanilla extract, the liquid created when the flavor molecules of a vanilla bean are extracted by alcohol.[13]

21.    The Philadelphia-style relied on the dark brown seeds contained inside vanilla bean pods which had not been subject to extraction – referred to as "caviar," "specks" or "flecks."

<u>Vanilla Extract</u>                                 <u>Vanilla Beans</u>

  

22.    Each of these forms of vanilla has its appeal – vanilla beans providing a more intense

---

[12] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").
[13] 21 C.F.R. §§ 169.175 (Vanilla extract.) (at least thirty-five (35) percent ethyl alcohol).

and pure flavor with visual appeal, while vanilla extract wins for ease of use, portability and price.[14]

23.   In the best tradition of American compromise, the majority of ice cream today is made in the Philadelphia-style, but flavored with vanilla extract.

## II.   Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

24.   The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[15]

25.   Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[16]

26.   It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[17]

27.   This demand could not be met by the natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

---

[14]  Lisa Weiss and Gale Gand, *Chocolate and Vanilla: A Baking Book*, United States: Potter/Ten Speed/Harmony/Rodale (2012) at 113-14; Louisa Clements, Pantry 101: Vanilla extract vs. vanilla beans, Chat Elaine, Nov. 30, 2015; David Lebovitz, The Perfect Scoop: Ice Creams, Sorbets, Granitas, and Sweet Accompaniments. United States: Potter/TenSpeed/Harmony (2011) at 26.

[15] 21 C.F.R. §169.3(c)

[16] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[17] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

28.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[18]

29.     Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.     Food Fraud as Applied to Vanilla

30.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[19]

31.     The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[20]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |

---

[18] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?, Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[19] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[20] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

- Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[21]
- Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter

➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality

- Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use
- Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, derived from recycled paper, tree bark or coal tar, to imitate taste of real vanilla

- "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[22]

➢ Compounding, Diluting, Extending

- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[23]

- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

---

[21] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[22] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[23] Berenstein, 423.

| | |
|---|---|
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Alleged injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans; *see International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005. Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County. |
| ➢ Ingredient List Deception[24] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list<br><br>o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics<br><br>o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described |

B. <u>The Use of Vanillin to Simulate Vanilla</u>

32.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

33.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

34.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[25]

35.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla

---

[24] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

[25] Katy Severson, <u>Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor</u>, Huffington Post, May 21, 2019.

plant, which means that almost all vanillin has no connection to the vanilla bean.

36.     Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

37.     Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

38.     This means that if a product is represented as being characterized by vanilla yet also contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is "Vanilla-vanillin extract _-fold" or "_-fold vanilla-vanillin extract", followed immediately by the statement "contains vanillin, an artificial flavor (or flavoring)"."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

39.     This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

C.   "Natural Vanillins" are Produced in a Non-Natural Manner

40.     The past ten years have seen the introduction of vanillin ingredients that purport to be a "natural flavor," based on the raw material being a natural source and undergoing a natural production process.

41.     However, the starting material, eugenol, is subjected to high heat and high pressure in conversion to vanillin.

42.     This method is actually considered by the FDA to be a synthetic method of producing a flavor by the FDA.

43.     This "natural vanillin" is produced by the ton in China, with little transparency or verification, before it is delivered to the flavor companies for blending.

44.     Even if a vanillin ingredient can be labeled a "natural flavor," when used with vanilla, it must still be declared as an artificial flavor.

D.  Vanilla "WONF" (in sheep's clothing) to Imitate Real Vanilla

45.     The global shortage of vanilla beans has forced the flavor industry to "innovate[ing] natural vanilla solutions…to protect our existing customers."[26]

46.     These "customers" do not include the impoverished vanilla farmers who are at the mercy of global conglomerates nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

47.     According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

48.     According to industry leaders like the head of "taste solutions" at Irish conglomerate Kerry, flavor manufacturers must "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

49.     These compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," blended together in a special ratio to complement and enhance

---

[26] Amanda Del Buuono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

the vanilla component.[27]

50.    A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[28]

III.    Ice Cream Flavor Labeling

51.    Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, and a leading scholar and researcher on vanilla, summarized the flavoring requirements in the context of ice cream flavored by vanilla:[29]

> There are three categories of vanilla ice cream, as defined by the FDA Standard of Identity. Vanilla ice cream Category I contains only vanilla extract. Vanilla ice cream Category II contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice cream Category III contains synthetic ingredients.

52.    Carol McBride, U.S. vanilla category manager for global flavor giant Symrise, noted these requirements and their effect on consumers: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers."[30]

A.    Early Ice Cream Flavoring Debate is "Stirring"

53.    Before formal regulations were enacted, Congressional Hearings from the 1930s offered the legislature the opportunity to state their position on the non-misleading designation of

---

[27] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

[28] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

[29] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).

[30] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

flavors on ice cream products.

54.   Unsurprisingly, the starting point for the debate was how to label vanilla ice cream flavored with vanillin obtained not from vanilla beans but from clove oil, a natural source material.

55.   Why, the lobbyists, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

56.   In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of the ice cream lobby's representative, Mr. Schmidt:

Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt:   Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:   *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled lemon "; and if it is cherry, it ought to be labeled "cherry."

57.   Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

Mr. Chapman   Do you make raspberry?

Mr. Hibben   Yes.

Mr. Chapman   And you put that on the label?

Mr. Hibben   We say "raspberry ice cream."

Mr. Chapman   And if it is peach, you put that on the label?

Mr. Hibben      It Is peach ice cream; yes.

Mr. Chapman  And If you call it vanilla, what do you put on?

Mr. Hibben      We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman  But you say you put in It oil of cloves instead of vanilla.

Mr. Hibben      We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman  If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben      No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman  Is it an extract from the vanilla bean?

Mr. Hibben      It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other.

Mr. Chapman  I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.[31]

58.   The above highlighted portions reveal that even before ice cream standards were established, the central question for ice cream flavoring was whether the flavor source was entirely derived from the characterizing flavor – whether raspberry for raspberry ice cream, vanilla for vanilla ice cream and so on.

B.  Ice Cream Flavoring Regulations

59.   The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come

---

[31] One of the reasons for the emphasis on flavor derived from the characterizing flavor was ice cream's status as a high value, expensive product, made mainly from milk and cream.  The use of ersatz flavoring lowered the quality of an otherwise valued item.

to be referred to as the '3 category flavor labeling.'"  Exhibit "A," FDA, Taylor M. Quinn,

Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association

of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979").

60.   The requirements "recognize[s] three distinct types of ice cream, based on the use of

natural and various combinations of natural and various combinations of natural and artificial

flavors that characterize this food." Exhibit "A," Quinn Letter, May 31, 1979; *see* 21 C.F.R. §

135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

**Vanilla Ice Cream Labeling Quick Chart**

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |
| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

61.   The key distinction between labeling flavors in ice cream compared to other foods is

in the meaning of "natural flavor."

62.   In ice cream, "natural flavor" refers to flavor derived only from the characterizing

flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing

flavor.

63.   For a category 1 ice cream, which "contains no artificial flavor, the name on the

principal display panel or panels of the label shall be accompanied by the common or usual name

15

of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

64.     Category II and III both may contain a natural characterizing flavor and artificial flavor simulating it, but differ based on whether the natural characterizing flavor predominates. *See* 21 C.F.R. §135.110(f)(2)(ii) ("Category II") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the natural flavor predominates"); 21 C.F.R. §135.110(f)(2)(iii) ("Category III") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates"); Exhibit "A," Quinn Letter, May 31, 1979 ("The flavor designation for category II ice cream is on the basis that the product contains both natural and artificial flavor, but the natural flavor predominates, whereas in category III the artificial flavor predominates.").

65.     The non-vanilla flavor which simulates the natural characterizing vanilla flavor is deemed to predominate when "the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent." *See* 21 C.F.R. §135.110(f)(5)(i); Exhibit "B," FDA, R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson, October 30, 1979 ("Newberry Letter, October 30, 1979") (a non-vanilla flavor "is deemed to simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream…such a product would come under category III and have to be labeled as 'artificial vanilla.'").

IV.     Flavoring Regulations for Ice Cream are Distinct from Other Foods

66.     The flavor regulations for ice creams are separate from the general flavor regulations for other foods. *Compare* 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; Exhibit "A," Quinn Letter, May 31, 1979 ("The general flavor regulations are not applicable to this standardized food.").

67.     The ice cream flavor designations were "established long before the development of the general flavor regulations published under 21 CFR 101.22." Exhibit "C," FDA, J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, April 10, 1979 to David B. Daugherty   ("Summers Letter, April 10, 1979") ("Consequently, the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard and is separate and apart from the general flavor regulations.").[32]

68.     Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

69.     "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

70.     For the purposes of designating the type of ice cream on the front label, whether a flavor complies with the general definition of natural flavor in other regulations has no relevance. Exhibit "C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."); Exhibit "A," Quinn Letter, May 31, 1979 ("It is our understanding that there are available in the market place, natural flavoring compounds that resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean.  These

---

[32] Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22.

flavor compounds would not comply with the intent of the flavor provisions of Category I ice cream").

71.     This is because 21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors."  Exhibit "E," Joseph Hile, Associate Commissioner for Regulatory Affairs, February 9, 1983, Formal Advisory Opinion at p. 9 ("Hile Letter, February 9, 1983") ("FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel").[33]

72.     At best, "[N]atural flavors not derived from vanilla beans may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates."  Exhibit "D," FDA, Quinn to Kenneth Basa, August 22, 1979 ("Quinn Letter, August 22, 1979").

V.  The Products are Misleading Because they Contain Non-Vanilla Flavoring

73.     The front label statements of "Vanilla Ice Cream" without qualification are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) no other flavors in the product simulate, resemble, reinforce, or enhance vanilla and (5) vanilla is the exclusive source of flavor.

A.  Ingredient List Declaration of "Natural Flavor" Refers to Ingredient that is Not Exclusively Vanilla

74.     The ingredient list reveals the Products contain non-vanilla flavors because "Natural Flavors" is declared.

---

[33] 21 C.F.R. § 135.110(f) was previously 21 C.F.R. § 135.110(e).

Ingredient List[34]

INGREDIENTS: ICE CREAM: SKIM MILK, CREAM, SUGAR, CORN
SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN
GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. COATING:
MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE,
LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET
CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH
ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND
NATURAL FLAVORS), COCONUT OIL, PALM OIL.                    Ⓤ D

INGREDIENTS: ICE CREAM: SKIM MILK, CREAM,
SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES,
CAROB BEAN GUM, GUAR GUM, CARRAGEENAN,
NATURAL FLAVOR, BETA CAROTENE

75.    Where a product is labeled vanilla ice cream without any qualification, but the

ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or one of the

flavoring ingredients, it means (1) the flavoring in the food is not exclusively vanilla, (2) the

product contains non-vanilla flavors obtained from arguably natural sources other than vanilla

beans and made through supposed natural processes and (3) the non-vanilla flavor simulates,

resembles and reinforces the vanilla flavor.

76.    The ingredient list does not declare the common or usual names of the exclusively

vanilla ingredients, *viz*, Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and

Concentrated Vanilla Flavoring.  *See* 21 C.F.R. §§ 169.175 to 169.178.

77.    These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ

only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than

this amount.[35]

78.    Because ice cream is a standardized food and the vanilla ingredients are subject to

their own standards of identity, the designation of these vanilla ingredients is controlled by 21

---

[34] The ingredient lists are substantively identical across the range of products but for ingredients not relevant to the allegations herein.
[35] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.

U.S.C. §343(g) – they are required to be specifically declared:[36]

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

B. "Natural Flavor" as Declared on Ingredient List in Accordance with 21 C.F.R. § 101.22 ≠ Vanilla Extract or Vanilla Flavoring

79.    "Natural Flavor" on the Products' ingredient list does not refer to an exclusively "Vanilla Extract."

80.    Since these two ingredients are not identical, there must be differences between them.

81.    The "Natural Flavor" used in the Products is most likely the ingredient known as "Vanilla With Other Natural Flavors" or "Vanilla WONF."

82.    This is a compounded flavor which contains potentiators and enhancers, like maltol, and often contains vanillin.

83.    This conclusion is reached by analyzing the relevant regulations coupled with the product analysis in the following section.

84.    Labeling rules require that where ingredients subject to a standard of identity they "shall be listed by common or usual name." *See* 21 C.F.R. § 101.4(a)(1).

85.    Vanilla extract and vanilla flavoring *are* subject to standards of identity. *See* 21 C.F.R. § 169.175; 21 C.F.R. § 169.177.

86.    "Natural flavor" is not the name of any food which is subject to a standard of identity.

---

[36] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

87.    "Natural flavor" is a term permitted as a designation for flavoring when (1) the flavor package received from a supplier is a mix of multiple flavors, without any standard way to declare such a blend, (2) it is necessary to protect trade secrets by not disclosing the individual flavor components in the ingredient list.

88.    Therefore, where an ingredient complies with the requirements for an exclusively vanilla ingredient, it must be designated as such.

89.    It would not be permitted to hide behind "natural flavor" on the ingredient list while at the same time claiming this ingredient is entirely vanilla extract or vanilla flavoring.

90.    The truth is that certain statements – like the ingredient list – are more judicious than others.

91.    Where it comes to an ingredient list, there is a greater expectation for compliance with the letter of the law, because this part of the product labeling has implications for safety, and is less prone to creative license than the front label.

VI.    Product Analysis Reveals Presence of Non-Vanilla Flavors

92.    Gas chromatography-mass spectrometry ("GC-MS") can determine the presence of flavor compounds typically associated with vanilla ("marker compounds").

93.    The four marker compounds for vanilla from real vanilla beans are present in consistent amounts, identified below.

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

94.    GC-MS analysis of the Products was performed by separating the outer chocolate

coating from the ice cream and taking a sample from the core of the Product.  Exhibit "F," GC-MS Report, October 10, 2019.

95.    Since the Products are a solid, the "purge-and-trap" method was used to extract the volatile organic compounds from the ice cream matrix and concentrate them for transfer into the gas chromatograph column.

96.    The mixture components were injected through the column and eluted at different times ("retention time"), shown on the x-axis.

97.    The y-axis measures the amount or "intensity" of the specific compounds in the sample.

98.    The elution of the compounds is plotted against their peaks in a chromatogram, a graph used to display scientific results obtained through gas chromatography.

99.    As the molecules are eluted, they are captured by the mass spectrometer.

100.   The molecules are broken down into ionized fragments and their mass-to-charge ("M/Z") ratio is calculated.

101.   The M/Z ratio is similar to a fingerprint of the molecules, which is compared against the M/Z ratios for all other known compounds to obtain a match.

102.   Each of the peaks in the chromatogram corresponds to a different compound.

103.   The relative area covered by a peak is proportional to its amount in the sample.

104.   These relative amounts are indicated in column two, Area Integration and column four, concentration, parts per million ("Conc. PPM w/w").

105.   Table 1 shows detection of vanillin (14.322 PPM) and p-hydroxybenzaldehyde (0.439 PPM), but does not indicate the presence of vanillic acid or p-hydroxybenzoic acid. Exhibit "F" at p. 5.

106.   The ratio of vanillin to p-hydroxybenzaldehyde is 32.6, which significantly exceeds the 10:1 ratio of these compounds in vanilla derived from vanilla beans.

107.   The product analysis failed to detect vanillic acid or p-hydroxybenzoic acid, two of the four marker compounds for vanilla.

108.   Table 1 also shows detection of maltol (MS Scan # 862) at 0.092 PPM.

109.   Maltol is a compound that is not typically found in vanilla, but it well-known in the flavor industry as a flavor enhancer or potentiator with a long-established usage in ice cream products.

110.   Maltol improves overall flavor, increases sweetness, and enhances the sensation of creaminess, all attributes relevant to developing a vanilla ice cream product.

111.   The mass spectrometer detected high levels of ethyl vanillin, a synthetic flavor which is used to substitute for real vanilla.

112.   Ethyl vanillin has 3.5 times the flavoring power of vanillin, which means its use in small amounts contributes a large "boost" to the vanilla flavor of the vanilla ice cream.

113.   Though it can be debated whether the detected ethyl vanillin was the result of the enrobing (the "chocolate"), mere dispersion or drift are not sufficient to cause detection of this substance at 0.349 PPM.

114.   This is because the ice cream sample was taken from the core of the Product.

115.   A possible explanation is that the chocolate-like coating contains a higher than usual amount of ethyl vanillin in order to spike the vanilla flavor, but without having to declare ethyl vanillin as part of the vanilla ice cream.

116.   Benzaldehyde was also detected, a compound not associated with real vanilla, but added to vanilla flavoring preparations to enhance vanilla.

117.   When a product is labeled "vanilla ice cream," consumers expect to receive flavor only from vanilla – not from ethyl vanillin, vanillin, maltol, benzaldehyde or other added flavoring compounds not naturally present in vanilla beans.

118.   The reasonable conclusion is consistent with the above hypothesis: (1) the Products likely contain a small amount of vanilla derived from vanilla beans, (2) the "Natural Flavor" does not refer exclusively to vanilla extract or vanilla flavoring and (3) the Products contain ingredients which simulate real vanilla's flavor.

119.   A company like defendant may invoke reliance on its flavor supplier who has told them the product contains "100% natural vanilla flavorings" or is "almost all vanilla."[37]

120.   Attempts at prying open this "black box" of the flavor industry invokes terms such as "proprietary," "trade secret" and "confidentiality."

121.   Such an argument is incredulous because there is nothing proprietary about vanilla extract, which has been prepared the same way for one hundred years, even before a standard of identity was established.

122.   Eventually, the flavor company may produce a single page document which says something like "Nat Vanilla Extract WONF" followed by a string of letters and numbers.

123.   All of these arguments miss the point and cast aside the long-established (and adhered to) three-category flavor labeling regime for ice cream.

124.   The requirements – and resulting consumer expectations for almost fifty years – are clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or flavor derived from vanilla beans." Exhibit "A," Quinn Letter, May 31, 1979; *see also* Exhibit

---

[37] "Almost all" is not "all" and the suffix, "-ing," is a giveaway that the flavor ingredient used is *like* vanilla, in the same way the suffix "-ey" applied to chocolate is another way of saying, "this product tastes like chocolate, but is not chocolate."

"C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans," "the standard for ice cream does not provide for the label designation of "With other [natural] flavors" (WONF).").

125.   The flavor houses are partially responsible for the consumer deception because even though they do not manufacture the final Product, they supply its most valuable and important component – the flavoring.

126.   The flavor companies are also in the best position to correct any deceptive or incorrect label statements with respect to flavor.

127.   The manufacturers are agreeable to following the misleading guidance of their flavor suppliers who are complicit in the mislabeling of the Products and ensuing consumer deception.

VII.   Product's Use of Coloring Misleads Consumers to Expect it Contains More Vanilla Than it Actually Does

128.   Defendant's Products contain "beta carotene," commonly known as the pigment in carrots.

129.   When used in food production, it provides a yellowish hue similar to the shades of cream common in milkfat and butter, produced by dairy cattle in the United States.

130.   No allegation is made with respect to the how the beta-carotene is declared in the ingredient list.[38]

131.   Rather, the addition of beta-carotene has the effect of modifying the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a tanner, darker shade like in the following stock image.

---

[38] 21 C.F.R. § 101.22(k)(3)



132. This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products.

VIII. Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

133. Competitor brands to defendant's Products are labeled as or containing vanilla ice cream, and are not misleading because they only contain vanilla.

A. Vanilla Ice Cream of Competitor and Defendant

134. The following is an example of Vanilla Ice Cream of defendant and a competitor.

<div style="display:flex">
Competitor Product          Product
</div>




**INGREDIENTS:** CREAM, SKIM MILK, CANE SUGAR, EGG YOLKS, VANILLA EXTRACT.

INGREDIENTS: ICE CREAM: SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. **COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND NATURAL FLAVORS), COCONUT OIL, PALM OIL.

**INGREDIENTS:** CREAM, SKIM MILK, CANE SUGAR, EGG YOLKS, VANILLA EXTRACT.

INGREDIENTS: ICE CREAM: SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, NATURAL FLAVOR, BETA CAROTENE.

135.   The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

B.   <u>Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition</u>

136.   Product names and identity statements for ice cream are established through application of the relevant regulations.

137.   Products are required to be identified and labeled in a way consistent with other products of similar composition.

138.   This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient.[39]

139.   Where two products are identified by the same descriptive terms and noun such as "Vanilla Ice Cream" and where the front label has no other modifications of these terms, consumers will be deceived into purchasing the lower quality product under the false impression

---

[39] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

that it contains the equivalent amount of said ingredients or components.

140.  Defendant's Products are misleading because they are represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and purchase the former expecting the two products to be identical in quality and fill.

IX.   "Milk Chocolate" Claim is Misleading

141.  The front label states "Vanilla Ice Cream with Milk Chocolate," contains vignettes of chocolate pieces, an image of an ice cream bar being dipped into what appears to be chocolate, brown colors evocative of the color of chocolate, and the phrase "Silky Smooth" – adjectives and descriptors typically used to describe chocolate, above the brand name, "Dove."

142.  The back label also describes how the vanilla ice cream is "dipped in silky smooth Dove Milk Chocolate."

143.  However, the ingredient list reveals that while the Products are dipped in a compound that *contains* milk chocolate, it is *not* milk chocolate as reasonable consumers expect and as the law requires.

<u>Ingredient List</u>

**INGREDIENTS: ICE CREAM:** SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. **COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND NATURAL FLAVORS), COCONUT OIL, PALM OIL. ⓤD

**COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVORS), COCONUT OIL, PALM OIL.

144.  Federal regulations require that where a food consists of milk chocolate and

vegetable fat ingredients are used, the "name of the food is 'milk chocolate and vegetable fat coating.'" *See* 21 C.F.R. § 163.155 ("Milk chocolate and vegetable fat coating."); 21 C.F.R. § 163.155(c )("Nomenclature").

145.   Because the Products contain coconut oil and palm oil in addition to their milk chocolate component, they are required to be labeled as "milk chocolate and vegetable fat coating."

146.   Defendant's front label is very clever because it says "Vanilla Ice Cream *With Milk Chocolate*."

147.   By denoting the milk chocolate through the term "with milk chocolate," such a statement is not technically untrue – milk chocolate is indeed a component of the compound coating.

148.   However, the impression received by consumers is that the coating is entirely chocolate.

149.   Defendant could have used a term such as "chocolatey coating" and consumers would have gotten the "hint" that the coating was like chocolate, but not real milk chocolate.

150.   Instead, consumers are deceived and pay more for the Products.

X.  Conclusion

151.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

152.   The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the ice cream, and chocolate as part of the outer portion of the Products, which is required and consistent with consumer expectations.

153.   Had plaintiff and class members known the truth about the Products, they would not

have bought the Product or would have paid less for it.

154.   The Products contain other representations which are misleading and deceptive.

155.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $7.99 per 10 oz, calculated on an average per ounce basis across the Products, excluding tax – compared to other similar products represented in a non-misleading way.

<div align="center">Jurisdiction and Venue</div>

156.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

157.   Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

158.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

159.   Plaintiffs' are citizens of New York.

160.   Defendant Mars Wrigley Confectionery US, LLC is a Delaware limited liability company with a principal place of business in Hackettstown, Warren County, New Jersey.

161.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

162.   Venue is proper because plaintiffs' and many class members reside in this District and defendant does business in this District and State.

163.   A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

164.   Plaintiffs' Mohammed Garadi is a citizen of Kings County, New York.

165.   Plaintiff Maria Engesser is a citizen of Queens County, New York.

166.   Defendant is a Delaware limited liability company with a principal place of business in Hackettstown, Warren County, New Jersey and upon information and belief, at least one member of defendant is not a citizen of New York.

167.   During the class period, plaintiffs' purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, in her state or an immediately adjacent state.

168.   Plaintiffs' would consider purchasing the Product again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

169.   The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

170.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiffs' and class members are entitled to damages.

171.   The claims and the basis for relief of plaintiffs' are typical to other members because all were subjected to the same representations.

172.   Plaintiffs' is an adequate representative because his interests do not conflict with other members.

173.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

174.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

175.   The counsel for plaintiffs' is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

176.   Plaintiffs' seeks class-wide injunctive relief because the practices continue.

<div align="center">New York General Business Law ("GBL") §§ 349 & 350<br>and Consumer Protection Statutes of Other States and Territories</div>

177.   Plaintiffs' asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

178.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

179.   Plaintiffs' and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

180.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredients – vanilla for ice cream and chocolate for coating –  and contains more of the characterizing ingredients than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

181.   Plaintiffs' and class members relied on the representations and omissions, paying more than they would have, causing damages.

<div align="center">Negligent Misrepresentation</div>

182.   Plaintiffs' incorporates by reference all preceding paragraphs.

183.   Defendant misrepresented the substantive, quality, compositional, organoleptic

<div align="center">32</div>

and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by these ingredients or components.

184.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

185.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

186.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

187.   Plaintiffs' and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

188.   Plaintiffs' and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq</i>.</u>

189.   Plaintiff incorporates by reference all preceding paragraphs.

190.   Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

191.   The Products warranted to plaintiffs' and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

192.   Defendant's front labels informed and warranted to plaintiffs' the Products contained

only the characterizing ingredients to impart flavor to the ice cream and outer coating portion, and that they were present in amounts sufficient to independently characterize the food.

193.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products ice cream flavoring and the outer coating on the front labels and knew or should have known same were false or misleading.

194.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

195.  Plaintiffs' provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

196.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

197.  Plaintiffs' and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

198.  Plaintiffs' incorporates by references all preceding paragraphs.

199.  Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) and/or flavor(s), and represent the Products were exclusively or predominantly flavored from those ingredients and contained sufficient independent amounts of same.

200.  The Products were not flavored nor exclusively contained the characterizing ingredients but from flavor compounds blended together and labeled as "natural flavor" and vegetable fat in place of milk chocolate.

201.  Defendant's fraudulent intent is evinced by its failure to accurately indicate the ice

cream contained flavor from non-vanilla sources on the front label and that the milk chocolate was a mere part of the compound coating with vegetable fat, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and want real chocolate instead of vegetable fat.

202.  Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

203.  Plaintiffs' and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

204.  Plaintiffs' incorporates by references all preceding paragraphs.

205.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs' and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs' demand a jury trial on all issues.

 **WHEREFORE,** Plaintiffs' pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs' as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:    November 12, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-03209-RJD-ST
United States District Court
Eastern District of New York

Mohammed Garadi, individually and on behalf of all others similarly situated,

Plaintiffs'

- against -

Mars Wrigley Confectionery US, LLC,

Defendant

# First Amended Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 12, 2019

/s/ Spencer Sheehan
Spencer Sheehan