United States District Court
Eastern District of New York

1:19-cv-03209-RJD-ST

Mohammed Garadi, individually and on
behalf of all others similarly situated,

Plaintiffs,

- against -

Mars Wrigley Confectionery US, LLC,

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
Spencer Sheehan
Christopher Patalano
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3409
Tel: (516) 268-7080
spencer@spencersheehan.com
cpatalano@spencersheehan.com

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
mreese@reesellp.com

*Attorneys for Plaintiffs*

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

LEGAL STANDARDS ....................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.      PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION ........................................ 4

        A.      Defendant is Factually Incorrect that the Product Tastes Like Vanilla ................. 5

        B.      Defendant Cannot Assert Truthfulness as a Defense for Alleged
                Deception ........................................................................................................... 7

        C.      Defendant's Argument is Based on Following "The Law of the
                District" ........................................................................................................... 10

        D.      Product's Ingredient List Supports Allegations of Non-Vanilla
                Flavoring and Fails to Clarify Front Label Claims ............................................. 12

        E.      Defendant's Citations to Other Cases Involve Instances Where Other
                Label Elements Cured the Deception .................................................................. 13

II.     PLAINTIFFS' GBL CLAIMS ARE BASED ON CONDUCT THAT IS
        DECEPTIVE INDEPENDENT OF FEDERAL OR STATE REGULATIONS ............. 15

        A.      Plaintiffs Do Not Rely on Violations of FDA or AML Regulations for
                their GBL Claims ............................................................................................. 16

        B.      Plaintiffs have Established a Nexus Between Conduct Which Violates
                Regulations and Misleads Consumers ............................................................... 17

III.    DEFENDANT'S    CHALLENGE    TO    PLAINTIFFS'    FACTUAL
        ASSERTIONS MUST BE DISREGARDED AT PLEADING STAGE ......................... 18

        A.      Defendant's Interpretation of the Applicable Regulations is
                Unsupported .................................................................................................... 18

        B.      Defendant's Attacks on Testing Method are Misplaced ...................................... 20

IV.     PLAINTIFFS PROPERLY ALLEGED COMMON LAW CLAIMS .............................. 21

        A.      Plaintiffs Properly Alleged Breach of Express Warranty Claims ........................ 21

     B.     Plaintiffs Properly Pled Fraud Claims ................................................................ 22

     C.     Plaintiffs' Claims of Unjust Enrichment are Not Duplicative ............................ 22

V.     PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF.......................... 23

CONCLUSION .................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Abounader v. Strohmeyer & Arpe Co.*,
    243 N.Y. 458 (1926) ...................................................................................................... 16

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*,
    No. 1:17-cv- 1235 (GHW) (S.D.N.Y. Mar. 30, 2019) ............................................. 6

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ........................................................................................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 3

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    No. 08-cv-1815 (2d Cir. Oct. 20, 2008) ................................................................. 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 3, 18

*Bell v. Publix Super Markets, Inc.*,
    No. 19-2581, 2020 WL 7137786 (7th Cir. Dec. 7, 2020) ..................................... 11

*Berger v. MFI Holding Corporation*,
    No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019) ............................................................. 14

*Berni v. Barilla S.p.A., et al. v. Schulman*,
    No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020) ............... 23

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003) ........................................................................................... 7

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F.Supp.3d 386 (E.D.N.Y. 2017) ...................................................................... 14

*Branca v. Bai Brands Ltd. Liab. Co.*,
    No. 3:18-cv-00757, 2019 U.S. Dist. LEXIS 37105 (S.D. Cal. Mar. 7, 2019) ......... 9

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ...................................................................................... 15

*Brumfield v. Trader Joe's Co.*,
    2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) .......................................................... 5

*Burton v. Iyogi, Inc.*,
    No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ............................ 22

iv

*Campbell v. Freshbev LLC*,
　　322 F. Supp. 3d 330 (E.D.N.Y. 2018) ................................................................ 14

*Campbell-Clark v. Blue Diamond Growers*,
　　No. 1:18-cv-5577 (E.D.N.Y. Dec. 17, 2019) ...................................................... 13

*Clark v. Westbrae Natural, Inc.*,
　　No. 20-cv-3221 (JSC), 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) ...................... 10

*Cojocaru v. City University*,
　　No. 19-cv-5428 (AKH) (S.D.N.Y. Sept. 28, 2020) ............................................ 7

*Cosgrove v. Blue Diamond Growers*,
　　No. 19-cv-8993 (VM), 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020) ...................... 10

*Daniel v. Mondelez Int'l, Inc.*,
　　287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................ 17

*Davis v. Hain Celestial Grp. Inc.*,
　　297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................................ 14

*DiPinto v. Westchester County*,
　　No. 18-cv-00793 (PMH) (S.D.N.Y. Oct. 19, 2020) ............................................ 7

*Doe v. Columbia University*,
　　831 F.3d 46 (2d Cir. 2016) .............................................................................. 20

*Dumont v. Reilly Foods Co.*,
　　934 F.3d 35 (1st Cir. 2019) .............................................................................. 12

*Duran v. Henkel of America, Inc.*,
　　__ F.Supp.3d __, 2020 WL 1503456 (S.D.N.Y. March 30, 2020) ........................... 4

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
　　553 F.3d 187 (2d Cir. 2009) .............................................................................. 7

*EEOC v. Pan Am. World Airways*,
　　576 F. Supp. 1530 (S.D.N.Y. 1984) ................................................................ 11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
　　541 U.S. 246, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) ..................................... 18

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
　　624 F.3d 106 (2d Cir. 2010) .............................................................................. 4

*Fink v. Time Warner Cable*,
　　714 F.3d 739 (2d Cir. 2013) .............................................................................. 8

*Fischer v. Mead Johnson Labs.*,
41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) ........................................... 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........................................................................................ 23

*FTC v. Sterling Drug, Inc.*,
317 F.2d 669 (2d Cir. 1963)............................................................................ 8

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)............................................................................ 3

*Gant v. Wallingford Bd. of Educ.*,
69 F.3d 669 (2d Cir. 1995).............................................................................. 4

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................ 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D. 374 (S.D.N.Y. 2016) .................................................................... 23

*Hammer v. Am. Kennel Club*,
803 N.E.2d 769, 1 N.Y.3d 294 (2003).............................................................. 16

*Hanley v. Chicago Title Ins. Co.*,
No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................ 4

*Henry v. Daytop Vill., Inc.*,
42 F.3d 89 (2d Cir.1994)................................................................................. 22

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................... 16, 17, 18

*In re DDAVP Indirect Purchaser Antitrust Lit.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012)............................................................... 17

*In re Trader Joe's Tuna Litig.*,
289 F. Supp. 3d 1074 (C.D. Cal 2017) ............................................................. 17

*Izquierdo v. Panera Bread Co.*,
No. 18-cv-12127 (VSB), 2020 WL 1503557 (S.D.N.Y. March 30, 2020)............... 10

*Jones v. Halstead Management Co., LLC*,
81 F. Supp. 3d 324 (S.D.N.Y. 2015).................................................................. 18

*Karlin v. IVF Am., Inc.*,
93 N.Y.2d 282 (1999) ..................................................................................... 4

*Lefaivre v. KV Pharm. Co.*,
No. 4:09-cv-00588, 2010 WL 59125 (E.D.Mo. Jan. 5, 2010) ................................................ 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
797 F.3d 160 (2d Cir. 2015)......................................................................................... 22

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018)........................................................................................ 4, 8, 9

*Melendez v. One Brands*,
No. 18-cv-00650, 2020 U.S. Dist. LEXIS 49094 (E.D.N.Y. Mar. 16, 2020)........................ 14

*Neri v. R.J. Reynolds Tobacco Co.*,
No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000).......................................... 21

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d. Cir. 2015)........................................................................................ 4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .................................................................................................. 4

*Patane v. Nestle N. Am., Inc.*,
314 F. Supp. 3d 375 (D. Conn. 2018) ........................................................................ 15, 17

*Patane v. Nestlé Waters North America, Inc.*,
369 F. Supp. 3d 382 (D. Conn. 2019) ......................................................................... 17

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1997)...................................................................................... 16

*Pichardo v. Only What You Need, Inc.*,
No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791
(S.D.N.Y. Oct. 27, 2020) ........................................................................................... 5, 6

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)........................ 14

*Rivera v. Navient Solutions, LLC*,
No. 1:20-cv-01284, 2020 WL 4895698 (S.D.N.Y. August 19, 2020)..................................... 5

*Ross v. Bolton*,
904 F.2d 819 (2d Cir.1990)........................................................................................ 22

*Sarr v. BEF Foods*,
No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ......................... 13

*Serrata v. Givens*,
No. 18-cv-2016, 2019 WL 1597297
(E.D.N.Y. Apr. 15, 2019).............................................................................................. 7

*Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*,
__ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045
(E.D.N.Y. August 24, 2020) ................................................................ 6, 9, 13, 20

*Sibrian v. Cento Fine Foods, Inc.*,
2020 WL 3618953 (E.D.N.Y. July 2, 2020) ........................................................ 13

*Solak v. Hain Celestial Grp., Inc.*,
No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018)....................... 14

*Steele v. Wegmans Food Markets, Inc.*,
No. 19-cv-09227, 2020 WL 3975461 (S.D.N.Y. Jul. 14 2020)................................. 5, 10, 20

*Threadgill v. Armstrong World Indus., Inc.*,
928 F.2d 1366 (3d Cir. 1991)....................................................................... 10

*Verzani v. Costco Wholesale Corp.*,
No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ........................................ 17

*Vizcarra v. Unilever United States, Inc.*,
No. 4:20-cv-02777, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ................................ 15, 20

*Warner v. StarKist Co.*,
No. 18-cv-0406, 2019 WL 1332573, (N.D.N.Y. May 25, 2019) ......................................... 16

*Wilson v. First Advantage Background Services Corp.*,
No. 19-cv-1756 (AWT) (D. Conn. Sept. 30, 2020) ..................................................... 7

*Zaback v. Kellogg Sales Co.*,
2020 WL 3414656 (S.D. Cal. June 22, 2020) ...................................................... 13

**Statutes**

21 U.S.C. § 337(a) ...................................................................................... 16

21 U.S.C. § 343(i)(2) .................................................................................... 12

21 U.S.C. §343(g) ....................................................................................... 12

21 U.S.C. §343(i) ....................................................................................... 12

N.Y. Gen. Bus. Law § 349................................................................... 1, 3, 4, 15

N.Y. Gen. Bus. Law § 350................................................................... 1, 3, 4, 15

**Regulations**

21 C.F.R. § 101.22(h)(1)..................................................................................... 12

21 C.F.R. § 101.4(a)(1)....................................................................................... 12

21 C.F.R. § 101.4(b)(1)....................................................................................... 12

21 C.F.R. § 169.175 (b)(1)................................................................................... 12

Plaintiffs respectfully submit this memorandum of law in opposition to the motion by Defendant Mars Wrigley Confectionery US, LLC ("Defendant" or "Mars") to dismiss the First Amended Complaint, ("Am. Compl."). For the reasons below, the Court should deny Defendant's motion.

## INTRODUCTION

Plaintiffs bring claims for damages for violations of New York General Business Law ("GBL") §§ 349 and 350 and common law claims on behalf of themselves and a New York class.[1]

Defendant argues that the claims in Plaintiffs' Amended Complaint should be dismissed with prejudice because Plaintiffs (1) fail to state a plausible claim of deception and (2) improperly seek to privately enforce federal and state regulations. *See* Defendant Mars's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Def. Mem."). None of these arguments can be the basis for dismissal of Plaintiffs' GBL or common law claims, and Defendant's motion should be denied.

## FACTUAL BACKGROUND

Defendant prominently states, "Vanilla" on the front of its soft drink beverages purporting to be flavored with vanilla (the "Product"). *See* below ("Vanilla" representation circled). *See* Am. Compl. at ¶¶ 1-3.

---

[1] Plaintiffs respectfully withdraw their claims based on the Products' "chocolate" representations. This was conveyed to Defendant prior to the date they served their motion, but too late to modify their moving brief.



Consumers want vanilla in vanilla flavored products to come from a real source, *i.e.*, from vanilla beans from the vanilla plant. *Id.* at ¶ 117. Unfortunately for consumers, the "Vanilla" representation on the Product is false and misleading. Defendant's Product may contain *some* vanilla, but its taste is provided by artificial vanilla flavors, including ethyl vanillin, that are not disclosed to consumers. *Id.* at ¶¶ 117-18.

Plaintiffs purchased the Product bearing the "Vanilla" statement on the front labeling. *Id.* at ¶ 167. Plaintiffs saw and relied on the "Vanilla" representation in believing that the Product's vanilla flavor came exclusively or predominantly from the vanilla bean instead of artificial flavors, and had Plaintiffs known the truth about the Products, they would not have bought the Product or would have paid less for them. *Id.* at ¶ 153. As a result of this misleading labeling, the Product is sold at a premium price, as compared to similar competing products represented in a non-misleading way, *Id.* at ¶ 155, and its value was materially less than its value as represented by

2

Defendant. *Id.* at ¶ 151.

Plaintiffs assert claims for violation of GBL §§ 349 and 350 *id.* at ¶¶ 177-81, and common law claims, *Id.* at ¶¶ 182-205[2], on behalf of a proposed class of similarly situated consumers who purchased the Product and who reside in all 50 states with sub-classes for the individual states and nationwide classes. *Id.* at ¶ 169. Plaintiffs seek monetary and injunctive relief, expenses, and reasonable attorneys' fees. *Id.* at 35-36 (Prayer for Relief, ¶¶ 3-5).

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").

"Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*"). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). A court "must accept all factual allegations in the complaint as true and draw all reasonable

---

[2] Plaintiffs withdraw negligent representation claims.

inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013).

The "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

## ARGUMENT

## I.   PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION

Plaintiffs bring claims under GBL §§ 349 and 350, which New York's highest court has recognized are founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999).

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.").

Whether a representation is likely to mislead a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of America, Inc.*, __ F.Supp.3d __, 2020 WL 1503456, at *4 (S.D.N.Y. March 30, 2020) (listing cases

in which motion to dismiss was denied); *see also Rivera v. Navient Solutions, LLC*, No. 1:20-cv-01284, 2020 WL 4895698, at *7 (S.D.N.Y. August 19, 2020) (same).

Defendant asks this Court to rule as a matter of law that a reasonable consumer understands that "vanilla" merely designates the Product's flavor and says nothing about whether it contains any vanilla. Def. Mem. at 16 ("Plaintiffs do not question the taste of the vanilla ice cream").

Plaintiffs have plausibly alleged Defendant's "Vanilla" representation on the front of the Product is likely to deceive reasonable consumers into believing the Product has a vanilla taste, provided predominantly or exclusively from vanilla beans. As Defendant has failed to rebut the FAC's contentions with documentation outside of the pleadings, this is not a rare situation in which dismissal as a matter of law is appropriate.

A.    Defendant is Factually Incorrect that the Product Tastes Like Vanilla

Defendant argues Plaintiffs' allegations of deception are implausible because the Product tastes like vanilla. *Steele v. Wegmans Food Markets, Inc.*, No. 19-cv-09227, 2020 WL 3975461 (S.D.N.Y. Jul. 14 2020) (dismissing case where product purportedly tasted like vanilla); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020) (beverage "does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get."); *see also*, *Brumfield v. Trader Joe's Co*., 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) (product labeled "Black Truffle Flavored" was not misleading as a matter of law because all the label "would suggest to a 'reasonable consumer acting reasonably' is that the product is designed to taste like black truffles, which, according to the Complaint, it does.").

However, the FAC is clear that the Product does not taste of vanilla because it lacks the flavor compounds necessary to replicate vanilla's unique taste. Am. Compl. at ¶ 107 ("The

product analysis fails to detect vanillic acid or p-hydroxybenzoic acid, two of the four marker compounds for vanilla" and significant to its taste); ¶ 109 (maltol), ¶ 111 (ethyl vanillin).

Defendant's Product contains added vanillin (and ethyl vanillin), which imparts sweetness, but lacks the accompanying flavor compounds that contribute cinnamon, floral, creamy, and buttery notes in authentic vanilla. These added vanillins skew the balance of flavor compounds which consumers associate with vanilla from vanilla beans. Am. Compl. at ¶ 112. *See Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*, __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045 at *5 (E.D.N.Y. August 24, 2020) ("[B]y looking at the products' Nutrition facts, plaintiffs could not even confirm the presence of ethyl vanillin in the beverages").

Plaintiffs alleged they did not expect the Product to contain artificial flavors, *viz*, vanillin and ethyl vanillin, and that this was material to them. Am. Compl. at ¶ 117 ("When a product is labeled 'vanilla ice cream,' consumers expect to receive flavor only from vanilla – not from ethyl vanillin, vanillin, maltol, benzaldehyde or other added flavoring compounds not naturally present in vanilla beans") but see *Pichardo*, 2020 U.S. Dist. LEXIS 199791, at *7 (finding no materiality regarding "A vanilla product that exclusively uses vanilla extract for vanilla flavor…than a vanilla product that uses vanillin from some other natural source.").

Courts within this Circuit have properly held that a complaint "may not properly be dismissed…on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant…that [reasonable] minds could not differ on the question of their importance." *Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*, No. 1:17-cv-1235(GHW) (S.D.N.Y. Mar. 30, 2019) quoting *ECA & Local 134 IBEW Joint Pension Tr. of*

*Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (addressing materiality in context of "reasonable investor").

Plaintiffs submit that the question of whether the Product's vanilla flavoring comes from vanilla beans or "synthetics and substitutes" is not one "so obviously unimportant," because the answer affects whether the Product tastes like vanilla.

Defendant's contentions regarding the Product's taste merely "create issues of fact which cannot be resolved on a motion to dismiss." *Wilson v. First Advantage Background Services Corp.*, No. 19-cv-1756 (AWT) (D. Conn. Sept. 30, 2020); *Cojocaru v. City University*, No. 19-cv-5428 (AKH) (S.D.N.Y. Sept. 28, 2020) (describing "disputed questions of fact that cannot be resolved at the pleading stage").

To accept Defendant's conclusory and unsupported argument that the Product tastes like vanilla "would mean disregarding Plaintiff's allegations, looking beyond the FAC, and accepting Defendants' version of events as true," which Courts cannot do on a motion to dismiss. *DiPinto v. Westchester County*, No. 18-cv-00793 (PMH) (S.D.N.Y. Oct. 19, 2020) citing *Serrata v. Givens*, No. 18-cv-2016, 2019 WL 1597297, at *5 (E.D.N.Y. Apr. 15, 2019) (noting that a defendants' qualified immunity arguments "were all predicated on the court's acceptance, and crediting, of materials outside the pleadings").

B.     Defendant Cannot Assert Truthfulness as a Defense for Alleged Deception

Defendant argues Plaintiffs' allegations of deception are implausible because the Product tastes like vanilla and contains some vanilla. Disregarding that the FAC disputes the Product tastes like vanilla, GBL §§ 349 and 350 prohibit not only marketing claims that are literally false but claims that have the capacity "to mislead even reasonable consumers acting reasonably under the circumstances." *Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003) (technically true statements are actionable under New York GBL §§ 349 and 350 if they are misleading); *FTC v. Sterling Drug,*

7

*Inc.*, 317 F.2d 669, 675 (2d Cir. 1963) (finding "Advertisements as a whole may be completely misleading although every sentence separately considered is literally true").

Defendant's position – that "Vanilla" refers to the flavor or taste – is a classic "ambiguity, where the statement in context has two or more commonly understood meanings, one of which is deceptive." *Sterling Drug*, 317 F.2d at 674.

The "context is crucial," because even accepting Defendant's argument, there are at least two explanations – that the flavor is exclusively or predominantly *from* vanilla beans or the taste is *similar* to vanilla beans. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Thus, Defendant cannot defeat Plaintiffs' claim with a defense of technical accuracy.

The Second Circuit recently affirmed this proposition in *Mantikas v. Kellogg Co.*, reversing dismissal where a complaint alleged false advertising and deceptive business practices under the GBL. *Mantikas*, 910 F.3d at 634, 635 n.1. In *Mantikas*, the front label, large font representations touted defendant's crackers as "WHOLE GRAIN," "MADE WITH WHOLE GRAIN" and "Made with 5g [or 8g] of WHOLE GRAIN per serving" *Id.* at 634–36.

Plaintiffs alleged the "Whole Grain" representations led them to believe the product was made predominantly of whole grain, when the grain content was mostly enriched white flour. *Id.* at 634–35, 637. According to the Second Circuit, these facts were sufficient to plausibly allege deception even though the product had some whole grain and the ingredient list disclosed (more) "enriched white flour" ahead (than) of "whole wheat flour." *Id.* at 637.

Here, as in *Mantikas*, the fact that the "Vanilla" statement may technically be accurate with respect to the flavor or ingredient cannot make the statement unactionable as a matter of law. Plaintiffs plausibly alleged that the Product's front label statement of "Vanilla" is likely to mislead reasonable consumers due to the fact that the Product contains "non-vanilla flavor [that] simulates,

resembles and reinforces the vanilla flavor." Am. Compl. at ¶ 75.

Defendant essentially asks this Court to rule contrary to *Mantikas* by allowing a conspicuous, misleading front-label statement regarding an ingredient that Defendant chooses to highlight, so long as the ingredient is in the Product in some minute amount or the Product supposedly tastes of vanilla. *Mantikas*, 910 F.3d at 638 (to determine "as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling [and] would validate highly deceptive marketing").

*Sharpe* adopted *Mantikas* when faced with root beer and cream soda emblazoned with a "Made with Aged Vanilla" statement. Those plaintiffs alleged this "communicate[d] to the reasonable consumer the false message that the vanilla flavoring comes from real vanilla" even though the amount of vanilla was a "trace or a *de minimis*" and "not detectable by advanced scientific means." *Sharpe*, 2020 WL 4931045 at *2; Am. Compl. at ¶ 35.

Though defendants argued that the presence of some real vanilla and a conspicuous "Naturally and Artificially Flavored" statement precluded any deception, the court disagreed, because those statements "fail[ed] to communicate that the quantity of the artificial flavoring far exceeds the quantity of natural vanilla." *Sharpe*, 2020 WL 4931045 at *2; *see also Branca v. Bai Brands Ltd. Liab. Co.*, No. 3:18-cv-00757, 2019 U.S. Dist. LEXIS 37105 (S.D. Cal. Mar. 7, 2019) (refusing to dismiss case where plaintiff contended malic acid should designate a beverage as "artificially flavored.").

As in *Sharpe*, Plaintiffs have alleged that the "Vanilla" representation communicates to the reasonable consumer the false message that the vanilla taste and flavor come from real vanilla when the quantity of artificial flavoring, including vanillin and ethyl vanillin, far exceeds the flavor

from the vanilla bean. Am. Compl. at ¶ 75; *Izquierdo v. Panera Bread Co.*, No. 18-cv-12127 (VSB), 2020 WL 1503557, at *2 (S.D.N.Y. March 30, 2020) ("It is materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food.")

C.   Defendant's Argument is Based on Following "The Law of the District"

Citing to a flurry of recent authority, Defendant asks this Court to rule as a matter of law that the representation as "Vanilla" is not deceptive because other district courts – with other plaintiffs and different items – reached that conclusion. Def. Mem. at 15-16; citing *Pichardo*, 2020 U.S. Dist. LEXIS 199791 (beverage "does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get."); *Steele*, 2020 WL 3975461 (S.D.N.Y. Jul. 14 2020) (dismissing case where lab test failed to prove the ice cream lacked any vanilla); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-3221 (JSC), 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993 (VM), 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020).

Defendant encourages the Court to engage in "herding" and "informational cascades," which "occurs among agents when their decisions are decreasingly determined by their own information and increasingly determined by the actions of others."[3] The recent district court decisions, "unlike the decisions of States' highest courts and federal courts of appeals, are not precedential in the technical sense: they have collateral estoppel,[1] res judicata,[2] and "law of the case"[3] effects, but create no rule of law binding on other courts." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 08-cv-1815 (2d Cir. Oct. 20, 2008) citing *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 & n.7 (3d Cir. 1991) ("it is clear that there is no such

_____

[3] Andrew F. Daugherty and Jennifer F. Reinganum, "Stampede to judgement: Persuasive influence and herding behavior by courts." *American Law and Economics Review* 1.1 (1999): 158-189.

thing as 'the law of the district'…The doctrine of stare decisis does not compel one district court judge to follow the decision of another…Where a second judge believes that a different result may obtain, independent analysis is appropriate.") and *EEOC v. Pan Am. World Airways*, 576 F. Supp. 1530, 1535 (S.D.N.Y. 1984) (decision of one district court is not binding precedent upon another district court).

Defendant urges this Court to note a supposed "weight of authority" in granting dismissal, and "rely on [this Court's] understanding of an emerging majority position as the primary or even sole reason to reach a particular conclusion."[4] However, following "non-binding authority for the sake of consensus alone…assumes that the prior decisions (whether individually or collectively) reflect superior information or knowledge" sufficient to override the Court's contrary inclinations.

Courts of Appeal have consistently held that "What matters most is how real consumers understand and react to the advertising," and that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers. Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Bell v. Publix Super Markets, Inc.*, No. 19-2581, 2020 WL 7137786, at *1 (7th Cir. Dec. 7, 2020) (reversing district court's dismissal of multidistrict litigation claims that "100% Parmesan Cheese" was only "ambiguous," and consumers were obligated to inspect the ingredients to clarify any ambiguity); *Mantikas*, 910 F.3d at 637 ("We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel [and ingredients list] on the side of the box to correct misleading information set forth in large bold type on the front of the box."); *Dumont v. Reilly Foods Co.*,

---

[4] Maggie Gardner, Dangerous Citations (June 19, 2020). 95 N.Y.U. L. Rev. (2020 Forthcoming), SSRN.

934 F.3d 35, 42 (1st Cir. 2019) (reversing district court and holding that in case involving a hazelnut creamer that "FDCA requirements effectively established custom and practice in the industry. Accordingly, it may be that a consumer's experience with that custom and practice primes her to infer from the absence of a flavoring disclosure that the product gets its characterizing nutty flavor from the real nut.").

   D.   Product's Ingredient List Supports Allegations of Non-Vanilla Flavoring and Fails to Clarify Front Label Claims

Defendant disputes that its listing of "Natural Flavor" is *prima facie* evidence of the presence of non-vanilla flavors. Def. Mem. at 9. While "vanilla extract" is a "natural flavor," when added independently to a food, its common or usual name is "vanilla extract." See 21 C.F.R. § 101.4(a)(1) (requiring ingredients to be listed under common or usual name); 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food is 'Vanilla extract'").

The common or usual name for defendant's flavoring ingredient is "Natural Flavor," a catch-all term for a flavor which may include vanilla and non-vanilla. See 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22."); see also 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way…Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor'").

If as Defendant contends, an exclusively vanilla ingredient were permitted to be designated as "natural flavor," the result would be conflict between 21 U.S.C. §343(g) and 21 U.S.C. § 343(i)(2), and it must be presumed Congress was aware of this issue. 21 U.S.C. §343(i) ("Where No Representation As To Definition And Standard Of Identity"); 21 U.S.C. §343(g) ("Representation As To Definition And Standard Of Identity").

Defendant's listing of "Natural Flavor" makes it inconceivable for consumers to ascertain

the Product contains non-vanilla flavors, even though they were not required to scrutinize the ingredient list. *Mantikas*, 910 F. 3d at 637 (concluding that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."); *Sharpe*, 2020 WL 4931045 at *5 (the front label vanilla representation "falsely implies that any vanilla content derives predominantly from the vanilla plant, instead of its artificial and synthetic counterpart.").

Contrary to Defendant's claims, *Zaback v. Kellogg Sales Co*., 2020 WL 3414656, at *3 (S.D. Cal. June 22, 2020) did not opine on what "natural flavor" means on an ingredient list. Rather, the plaintiff merely alleged that defendant's granola did not contain vanilla and/or contain *enough* vanilla because the ingredient list identified "natural flavor." Significantly, no further information was offered as to *how much* vanilla or what *besides* vanilla the flavoring contained. Here, Plaintiffs offered specific information in the form of the lab analysis showing the *amount* of vanilla and the presence of artificial vanilla (ethyl vanillin). Am. Compl. at ¶¶ 92-127.

E.     <u>Defendant's Citations to Other Cases Involve Instances Where Other Label Elements Cured the Deception</u>

Defendant cites to several decisions within this Circuit which dismissed claims alleging front label misrepresentations. Def. Mem. at 10-11, citing *Sibrian v. Cento Fine Foods, Inc.*, 2020 WL 3618953 (E.D.N.Y. July 2, 2020) ("San Marzano" tomatoes were not deceptive to reasonable consumer because reasonable consumer would not know the details of the labeling scheme); *Campbell-Clark v. Blue Diamond Growers*, No. 1:18-cv-5577 (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that consumers were misled by "nut and rice" crackers where ingredient list disclosed accurate amounts); *Sarr v. BEF Foods*, No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) (dismissing claims where plaintiff alleged it was misleading to promote the presence of butter in mashed potatoes because there was more butter

than vegetable oil ingredients); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019) (same) *but see Berger v. MFI Holding Corporation*, No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019) (refusing to dismiss plaintiff's claims that "made with real butter" and "fresh potatoes" were deceptive because mashed potatoes contained *less* butter than margarine); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270, at *31 (N.D.N.Y. Apr. 17, 2018) (dismissing complaint because "veggie sticks" was truthful statement about vegetable content because potatoes are a vegetable); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d. 330, 341 (E.D.N.Y. 2018) (pre-*Mantikas* decision dismissing claim product was deceptively marketed as "cold-pressed" because labeling did not say it was *only* cold-pressed); *see also Davis v. Hain Celestial Grp. Inc.*, 297 F. Supp. 3d 327 (E.D.N.Y. 2018) (same); *Melendez v. One Brands*, No. 18-cv-06650, 2020 WL 1283793, *6 (E.D.N.Y. Mar. 16, 2020) (finding product name of "One Bar" promoting one gram of sugar would not mislead reasonable consumers to expect product was low in calories since calories listed on nutrition facts); *Bowring v. Sapporo U.S.A., Inc.*, 234 F.Supp.3d 386, 392 (E.D.N.Y. 2017) (dismissing claims that Japanese symbols and theme misled consumers to believe beer was brewed in Japan, where the can disclosed it was a product of Canada).

These cases uniformly stand for the proposition that a front label representation is not necessarily misleading where other parts of the labeling cure the deception. In contrast, the abundance of artificial flavoring in Defendant's Product was only determined through advanced scientific testing, which prevented reasonable consumers from following up or learning the truth from the ingredient listed as "Natural Flavor." Am. Compl. at ¶ 180 ("the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the

14

characterizing ingredients."); *Sharpe*, 2020 WL 4931045, at *12 ("ethyl vanillin, the substance plaintiffs allege is exponentially present compared to natural vanilla, is never explicitly disclosed to consumers…Rather, it took advanced scientific testing to reveal this."); *see also Vizcarra v. Unilever United States, Inc.*, No. 4:20-cv-02777, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) (denying motion to dismiss where plaintiff's analytical testing showed ice cream did not contain flavor exclusively from vanilla plant).

Following *Mantikas* and *Sharpe*, this Court should conclude that Plaintiffs have plausibly alleged deceptive business practices and false advertisement under GBL §§ 349 and 350.

## II.  PLAINTIFFS' GBL CLAIMS ARE BASED ON CONDUCT THAT IS DECEPTIVE INDEPENDENT OF FEDERAL OR STATE REGULATIONS

Defendant argues that Plaintiffs are improperly attempting to enforce FDCA regulations. Def. Mem. at 7-12 citing *Patane v. Nestle N. Am., Inc.*, 314 F. Supp. 3d 375, 387-88 (D. Conn. 2018) ("*Patane I*") (dismissing GBL claims based solely on violation of FDA regulations).

However, Plaintiffs allege that Defendant's labeling constitutes deceptive business practices under GBL § 349 and false advertising under GBL § 350 because the "Vanilla" labeling misrepresents that the Product's flavoring is mainly from vanilla beans, when its vanilla taste is from synthetic vanilla substitutes. *See* Am. Compl. at ¶ 117.

Plaintiffs alleged that the Product is misleading because "[w]hen a product is labeled 'vanilla ice cream,' consumers expect to receive flavor only from vanilla – not from ethyl vanillin, vanillin, maltol, benzaldehyde or other flavoring compounds not naturally present in vanilla beans." Am. Compl. at ¶ 117.  These are "'free-standing claim[s] of deceptiveness under GBL § 349 that happen to overlap with a possible claim' under another statute that is not independently actionable." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005). In fact, this deceptive conduct pre-dated the FDA. Am. Compl. at ¶¶ 25-26.

A.     Plaintiffs Do Not Rely on Violations of FDA or AML Regulations for their GBL
       Claims

In misconstruing the doctrine of "private enforcement" of the FDCA and New York

Agriculture and Markets Law ("AML"), Defendant recategorizes a standard consumer protection

action to one where Plaintiffs' theory is supposedly based on Defendant's committing "fraud-on-

the-FDA." Def. Mem. at 7-8 citing 21 U.S.C. § 337(a) and *PDK Labs, Inc. v. Friedlander*, 103

F.3d 1105, 1113 (2d Cir. 1997) (dismissing claims where defendant alleged "PDK's products are

sold without proper FDA approval").

That Plaintiffs are not seeking to privately enforce any regulations is evident because the

misleading representations were made to Plaintiffs and consumers, not to the FDA. Am. Compl.

at ¶¶ 1-2; *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F.

Supp. 2d 356, 369 (E.D.N.Y. 2010) ("The misrepresentation at issue in *Buckman* was not made to

the plaintiff – or consumers at large – but to the FDA itself."); *Buckman Co.*, 531 U.S. at 352

(noting "clear evidence that Congress intended that the MDA be enforced exclusively by the

Federal Government. 21 U.S.C. § 337(a)."); *Hammer v. Am. Kennel Club*, 803 N.E.2d 769, 1

N.Y.3d 294, 301 (2003) (private plaintiff prohibited from enforcing AML § 353, which prohibited

tail length of Brittany Spaniel dogs, because this was previously part of the criminal code and

subject to a "comprehensive statutory enforcement scheme.") *but see Warner v. StarKist Co.*, No.

18-cv-0406, 2019 WL 1332573, at *1 (N.D.N.Y. May 25, 2019) (finding the AML "confers a right

of action upon an ultimate purchaser" and that a "Heart-Check Mark" without disclosing it was a

paid endorsement was sufficient to state a claim under the AML (and GBL) *citing Abounader v.

Strohmeyer & Arpe Co.*, 243 N.Y. 458, 463 (1926)).

B.     Plaintiffs have Established a Nexus Between Conduct Which Violates Regulations and Misleads Consumers

There is a difference between "fraud-on-the-FDA claims [which] conflict with, and are therefore impliedly pre-empted by, federal law," and those "of the type" that "would give rise to a recovery under state law even in the absence of the FDCA," *In re Bayer Corp.*, 701 F. Supp. 2d at 369; *In re DDAVP Indirect Purchaser Antitrust Lit.*, 903 F. Supp. 2d 198, 220 (S.D.N.Y. 2012) (denying motion to dismiss based on preemption because even though "failure to comply with FDA disclosure requirements…may be *evidence* of such a claim…it is not an affirmative element that Plaintiffs are required to prove to make out" a consumer protection claim.) (emphasis in original).

In other words, there must be a nexus between the regulatory violations and *how* consumers were misled. *Compare Patane*, 314 F. Supp. 3d at 387 (dismissing claims because "[e]ach and every one of plaintiffs' claims are wholly FDCA dependent.") with *Patane v. Nestlé Waters North America, Inc.*, 369 F. Supp. 3d 382, 394 (D. Conn. 2019) ("*Patane II*") (denying second motion to dismiss where Court acknowledged the relevance of plaintiffs' citations to regulatory authority which sets standards for various types of conduct); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) (finding that even if defendant violated a technical regulation, no action under the GBL will lie because the underlying conduct – the number of shrimp in a cellophane-covered tray – could not deceive consumers into thinking they would get *more* shrimp); *see also In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (C.D. Cal 2017) ("*Trader Joe's*") (New York GBL claims precluded where the basis of the claim is entirely on violation of federal "pressed weight" regulations); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) (dismissing GBL claims based exclusively on the presence of non-

functional slack-fill because the products "clearly disclosed accurate net weight and/or the total product count.").

Here, Plaintiffs' core allegations are that the Product substitutes a valued flavoring ingredient with undisclosed artificial flavors including ethyl vanillin and vanillin. This is "conduct that would give rise to liability under traditional common law principles." *In re Bayer Corp.*, 701 F. Supp. 2d at 369 citing *Lefaivre v. KV Pharm. Co.*, No. 4:09-cv-00588, 2010 WL 59125, at *3 (E.D. Mo. Jan. 5, 2010); *Patane*, 369 F. Supp. 3d at 394 (common "for consumer protection and unfair trade practices statutes to serve as a vehicle for a cause of action based on conduct that violates an independent state law standard that is not itself otherwise actionable.") citing *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252-54, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) (distinguishing in preemption context between "standards" and "methods of standard enforcement").

## III.   DEFENDANT'S CHALLENGE TO PLAINTIFFS' FACTUAL ASSERTIONS MUST BE DISREGARDED AT PLEADING STAGE

Plaintiffs' allegations about the applicable regulations and Product testing are factual assertions, which must be taken as true on a motion to dismiss. *Jones v. Halstead Management Co., LLC*, 81 F. Supp. 3d 324, 335 (S.D.N.Y. 2015) (refusing to "assay the weight of evidence" before the parties engage in discovery). Given that flavor industry groups acknowledged current deceptive labeling practices and the presence of added vanillin and ethyl vanillin, the issues "raise a right to relief above the speculative level," sufficient to "nudge" the allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548, 555. Am. Compl. at ¶¶ 45-50, 92-116.

### A.   Defendant's Interpretation of the Applicable Regulations is Unsupported

Without support, Defendant contends that Plaintiffs' interpretation of applicable regulations – shared by The Flavor and Extract Manufacturers Association of the United States

("FEMA") and the FDA – is flawed. Def. Mem. at 6 (stating that the vanilla regulations apply only "When these flavorings are sold separately").

In the context of ice cream, flavor only or predominantly from vanilla beans is not the far-fetched idea Defendant claims. Am. Compl. at ¶¶ 133-35.  In fact, all competent and credible interpretations support Plaintiffs' interpretation.

| Authority | Support |
|---|---|
| Symrise, 2016 | If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers. Am. Compl. at ¶ 52. |
| FEMA, 2018 | When consumers purchase ice cream labeled as "vanilla ice cream" they expect it to be flavored with vanilla flavoring derived from vanilla beans unless labeled otherwise. |
| | If a flavoring is represented as 'vanilla' and/or tastes like vanilla it is subject to the standards of identity for vanilla flavorings and must comply with the labeling requirements for the standards. |
| Daphna   Havkin-Frenkel,   Ed., Handbook of Vanilla Science and Technology, 2018. | As defined by the FDA Standard of Identity…Vanilla ice cream Category I contains only vanilla extract. Am. Compl. at ¶ 51. |
| FDA Advisory Opinion, February 9, 1983 | FDA must treat all [any] natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel" of "Category I" ice cream. Am. Compl. at ¶ 71. |
| FDA, April 10, 1979 | A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans. Am. Compl. at ¶ 70. |
| FDA, August 22, 1979 | natural flavoring compounds that resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean… would not comply with the intent of the flavor provisions of Category I ice cream. Am. Compl. at ¶ 70. |

B.  Defendant's Attacks on Testing Method are Misplaced

Defendant's reliance on *Steele* for the defense that Plaintiffs' testing should not hold weight asks the Court to inappropriately weigh evidence on a motion to dismiss. Def. Mem. at 19; *Doe v. Columbia University*, 831 F.3d 46, 59 (2d Cir. 2016) ("The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed.").

This overlooks that GC-MS is a method of targeted and non-targeted detection, capable of identifying the wider range of volatile and marker compounds responsible for the bulk of vanilla's flavor. The benefit is a focus on signals and comparison with a known authentic sample.

The allegations in *Steele* did not allege *that* vanilla ice cream contained artificial flavors or ethyl vanillin. *Steele*, 2020 WL 3975461 at *4-5 *compare with Sharpe*, 2020 WL 4931045 at *4 ("Testing disclosed that the predominant, if not exclusive, source of the vanilla flavor derives from an artificial, synthetic ingredient – ethyl vanillin."); *see also Vizcarra*, 2020 WL 4016810, at *1 (denying motion to dismiss where plaintiff's analytical testing showed the ice cream did not contain flavor exclusively from vanilla plant).

The *Twombly* plausibility standard recognizes the challenges faced by plaintiffs at the pleading stage, because in many instances, "the facts are peculiarly within the possession and control of the defendant," such as the composition of its "Natural Flavors." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Plaintiffs' testing "makes the inference of culpability plausible" by revealing an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation.

20

## IV.    PLAINTIFFS PROPERLY ALLEGED COMMON LAW CLAIMS

### A.    Plaintiffs Properly Alleged Breach of Express Warranty Claims

Defendant's argument with respect to the lack of pre-suit notice fails because New York Courts have created an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); *see also Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) ("the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations.").

To state a claim for breach of express warranty, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) a buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

Plaintiffs alleged that (1) Defendant expressly warranted that their Product's vanilla taste was from real instead of artificial vanilla; (2) Defendant breached the express warranty because the Product contains *de minimis* vanilla, boosted by ethyl vanillin; (3) Defendant knew the purpose for which its representations were to be used – for consumers seeking a product with a vanilla taste only from vanilla beans; (4) Defendant's description – vanilla, without qualification – did not conform due to added ethyl vanillin and (5) they purchased the Product based upon these representations. Am. Compl. at ¶¶ 189-97. *Goldemberg*, 8 F. Supp. 3d at 482-83 (denying motion to dismiss express warranty claims based on "Active Naturals" containing mostly synthetic ingredients).

B.    Plaintiffs Properly Pled Fraud Claims

Defendant claims that Plaintiffs fail to plead fraud with the required particularity of Fed. R. Civ. P. 9(b). Def. Mem. at 22-23. To satisfy this requirement, a "complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec*., LLC, 797 F.3d 160, 171 (2d Cir. 2015). The FAC exceeds this standard.

Defendant was the speaker of the representations and omissions with respect to the amount and proportion of real vanilla in the Product. Am. Compl. at ¶¶ 1-3, 198-203. The statements and omissions were fraudulent because the Product did not disclose a trace amount (if any) of vanilla was boosted by ethyl vanillin. Am. Compl. ¶ 117. These allegations meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

C.    Plaintiffs' Claims of Unjust Enrichment are Not Duplicative

Defendant argues that the Court should dismiss Plaintiffs' unjust enrichment claim because it is duplicative. Def. Mem. at 23-24. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying dismissal of unjust enrichment because "it is well-settled that parties may plead in the alternative").

To the extent this Court finds that Plaintiffs do not state claims pursuant to the GBL or common law claims, the Court may hold that Plaintiffs' unjust enrichment claims are viable. Thus, because questions of fact remain as to all of Plaintiffs' claims, dismissal of unjust enrichment is premature.

## V.     PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs have standing to pursue injunctive relief because they are unable to rely on the Product's labels in the future, which causes them to avoid purchasing the Product even though they would like to. This constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

A recent Second Circuit opinion does not stymie Plaintiffs' request for injunctive relief. *Berni v. Barilla S.p.A.*, *et al. v. Schulman*, No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020). The court in *Berni* correctly recognized that for purposes of class certification, injunctive relief addressed to past conduct was insufficient to meet the requirements of Rule 23(b)(2). Plaintiffs here, as proposed class representatives, seek monetary damages *in addition to* injunctive relief. In *Berni*, millions of other class members would have their rights extinguished in support of a settlement which granted them fictitious relief in the form of a "fill-line." This case, at the pleading stage, does not require a conclusion which denies any injunctive relief.

Numerous courts have concluded that the inability to rely on the labels in the future, as alleged in the FAC, constitutes a threat of harm. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("plaintiffs have standing to seek injunctive relief…because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 at 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Date:   December 14, 2020

Respectfully submitted,

Sheehan & Associates, P.C.

/s/Spencer Sheehan

Spencer Sheehan
spencer@spencersheehan.com

Christopher Patalano
cpatalano@spencersheehan.com

60 Cuttermill Rd Ste 409
Great Neck NY 11021-3409
Tel: (516) 268-7080

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
mreese@reesellp.com

1:19-cv-03209-RJD-ST
United States District Court
Eastern District of New York

Mohammed Garadi, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

Mars Wrigley Confectionery US, LLC,

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   December 14, 2020

/s/Spencer Sheehan

**Certificate of Service**

I certify that on December 14, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

      /s/ Spencer Sheehan